Dewey J. VARN

v.

The UNITED STATES.

No. 479–84C.

United States Claims Court.

Oct. 2, 1987.

Alfred Lawrence Toombs, Washington, D.C., atty. of record, for plaintiff, Barnett & Hanna, of counsel.

E. Kathleen Shahan, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant, Captain James M. Kinsella, Dept. of the Air Force, of counsel.

## OPINION

MEROW, Judge:

Plaintiff, Dewey J. Varn, appeals from a decision of the Air Force Board for Correction of Military Records (AFBCMR) denying plaintiff's request that adverse statements in his Officer Effectiveness Report (OER) be deleted, and denying his claim that, because of ineffective counsel and an illegal polygraph examination, he was, ultimately, passed over twice for promotion to major and discharged from the Air Force. The matter is now before the court on the parties' cross-motions for summary judgment. There are no material facts in dispute. Based on the pleadings, briefs and record submitted, for the reasons discussed below, defendant's motion is granted, plaintiff's cross-motion is denied and the complaint is to be dismissed.

*Facts*

The plaintiff was appointed a Second Lieutenant, Reserve Air Force, on June 30, 1966, and was integrated into the Regular Air Force on January 4, 1967. Plaintiff held the rank of Captain when he was assigned to Hellenikon Air Base near Athens, Greece. While assigned to Hellenikon, he assisted the Air Force Office of Special Investigation (OSI) in a secret intelligence assignment. Subsequently, in the summer of 1977, Captain Varn took a routine polygraph test at OSI request. During the test he was questioned regarding, among other matters, the purchase of goods he had made at the Army and Air Force Exchange Service (AAFES). He was not advised of his rights under Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831, prior to the OSI questioning.[1]

Thereafter, two formal Air Force investigations of Captain Varn's activities regarding the goods he purchased at the AAFES were conducted. The OSI conducted one investigation from January 19 to April 7, 1978, and Captain Varn, after being advised of his rights under Article 31 of the UCMJ, made admissions similar to those he made during the earlier polygraph test. The second investigation was conducted from May to June 1978, pursuant to Article 32 of the UCMJ (10 U.S.C. § 832), and resulted in general court-martial charges being preferred against Captain Varn on the ground that he had engaged in the sale of controlled base items to an unauthorized person.[2] Captain Varn's defense attorney advised him to accept "nonjudicial punishment," pursuant to Article 15 of the UCMJ (10 U.S.C. § 815), offered by his commanding officer in lieu of court-martial. Plaintiff accepted the "nonjudicial punishment" on August 11, 1978; he was fined $1,500

---

1. 10 U.S.C. § 831 provides:
 "No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

2. Failure to comply with Air Force regulations against "black marketing" is a crime under the UCMJ, 10 U.S.C. §§ 801, *et seq*. The issue of whether Captain Varn violated laws and/or regulations concerning "black marketing" is not here before the court.

and he agreed to tender his resignation from the Air Force. At the same time, he added to his written acceptance of the Article 15 punishment that he had not received adequate legal counsel during the course of the proceeding. The plaintiff later made a formal request to withdraw his resignation which was approved by the Secretary of the Air Force on November 19, 1978. He appealed the Article 15 nonjudicial punishment on the ground that he had not received competent legal counsel. The defense attorney submitted a written statement as to his representation of Captain Varn. The appeal was denied by his commanding officer and was then forwarded to a superior officer, who upheld the Article 15 punishment after determining Captain Varn had adequate legal advice and that sufficient evidence, independent of any admissions he made to the OSI, supported the punishment.

Captain Varn received his Officer Effectiveness Report for the period November 4, 1977 through July 6, 1978, on February 14, 1979. On July 7, 1978 his supervisor gave Captain Varn an "above standard" mark in the performance factor category "professional qualities." On January 22, 1979, an additional rater gave the plaintiff a "far below standard" for the category, stating that he questioned Captain Varn's fitness to serve in the Air Force based on the OSI investigation,[3] which found that Captain Varn had been involved in the buying and selling of base exchange items to unauthorized persons.

The plaintiff, who was allowed to respond to these adverse comments, stated that the comments were "inappropriate at this time" because the referenced OSI investigation had not been finalized within the rating period.[4] The plaintiff then applied to the Air Force Officer Personnel Records Review Board (OPRRB) for removal of this OER from his record on the same ground. The OPRRB denied his application.

Captain Varn became eligible for promotion to the permanent rank of major. He was considered by selection boards in 1980 and 1981, neither of which recommended that he be selected for promotion.

Under the relevant statutory law, after being "passed over" twice for promotion, the member must be relieved of his or her commission and discharged. See 10 U.S.C. § 632 (Supp. IV 1980); 10 U.S.C. §§ 8299 and 8303(d) (1976). Captain Varn was discharged, effective April 30, 1981. Thereafter, to preserve his opportunity for a paid military retirement, he reenlisted in the Air Force as a sergeant, which rank he held until he retired on January 31, 1985.

Subsequently, the plaintiff appealed the Article 15 nonjudicial punishment and his adverse OER to the AFBCMR. He requested that:

1. The OER rendered for the period 4 November 1977 through 6 July 1978 be corrected by removing the impermissible statements of the additional rater.

2. The imposition of the Article 15 nonjudicial punishment be deleted from his record.

3. His records be retroactively reviewed to determine his eligibility for promotion to the grade of major.

4. He be reinstated to the rank he held at time of his separation from active

---

3. The additional rater, a colonel, USAF, added the following comments to the plaintiff's OER: "Nonconcurrence is based on daily observation. OSI Case No. 7871D19–211 revealed that Captain Varn was involved in the acquisition and sale of a significant number of BX [Base Exchange] items to unauthorized persons in a friendly foreign country. Because of this offense he was relieved of his duties. Captain Varn's offense is particularly significant as he was a member of the U.S. Mission staff and enjoyed special privileges and trust. His actions jeopardized U.S. relations with the host government as well as the credibility of the officers of our armed forces. I question his fitness to serve in the USAF."

4. Air Force Regulation 36–10, ¶ 4–9(a) states: "*Inappropriate Comments.* Certain material is inappropriate and must not be included in evaluation reports or indorsements to them. Do not refer to:
 (a) Charges preferred, investigations, reviews by boards of evaluation or inquiry, or any similar actions related to the officer that have not been finalized at the time the report closes or information obtained solely through such incomplete actions."

commissioned service, with restoration of back pay and full benefits.

During the processing of plaintiff's application, the AFBCMR requested and received five opinions from Air Force personnel agencies and the Air Force Judge Advocate General.[5] The plaintiff was given the opportunity and did respond to the opinions received by the AFBCMR.

Mr. Varn's application was denied by the AFBCMR on the grounds that: (1) insufficient relevant evidence had been presented to demonstrate the existence of probable error or injustice; (2) there was sufficient evidence to support imposition of punishment under Article 15 independent of any admissions he made to the OSI; (3) Mr. Varn received extensive and adequate legal advice and guidance with respect to his choice to accept Article 15 nonjudicial punishment, rather than a court-martial; (4) the additional rater's comments were not impermissibly added to his OER. The AFBCMR, thus, did not grant his request for retroactive promotion and reinstatement.

Plaintiff appealed the AFBCMR's denial to the United States District Court for the District of Columbia, which transferred his claim to the United States Claims Court.

In his amended complaint, plaintiff requests the following relief:

(1) The OSI polygraph be held illegal, and all judicial and administrative proceedings which resulted from this polygraph be held void;

(2) All judicial and administrative proceedings held to be void by this court be deleted from plaintiff's military records;

(3) Plaintiff's military records be retroactively reviewed to determine his eligibility for retirement at the permanent grade of Major or, in the alternative, the permanent grade of Captain;

(4) Plaintiff be reinstated to the permanent rank of Major for the period May 31, 1980 through January 31, 1985 with restitution of back pay and full benefits.

### Discussion

The parties agree that the issue presented in their cross-motions for summary judgment is whether the decision of the AFBCMR was arbitrary, capricious, unsupported by substantial evidence, or otherwise unlawful. Given a money claim, there is no question that this court has jurisdiction to consider claims that a correction board, *i.e.*, the AFBCMR, has improperly failed to correct an alleged error or injustice. *Sanders v. United States*, 219 Ct.Cl. 285, 300–01, 594 F.2d 804 (1979). However, the court's scope of review in such cases is narrow. *See Crispino v. United States*, 3 Cl.Ct. 306 (1983). The AFBCMR decision is upheld unless it is arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law and/or regulations. Review is limited to whether the AFBCMR's decision has a rational basis and is supported by substantial evidence. *Romero v. Department of the Army*, 708 F.2d 1561, 1563 (10th Cir.1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Moreover, even if injustice or error is found, it is reversible only if it is serious and prejudicial to the plaintiff. *Sanders v. United States*, 219 Ct.Cl. at 298. The plaintiff "must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States*, 219 Ct.Cl. at 302. The Court of Claims stated

---

5. For example, a submission dated April 14, 1981 analyzed plaintiff's record as it would have appeared absent the contested OER. The AFBCMR was informed that, in this event, plaintiff's record "was not sufficiently strong to be highly competitive for selection to permanent major." The opinion concluded as follows:

"7. Based on the above, we are convinced that applicant's record was not of sufficient quality to be highly competitive for selection to permanent major by either board, regardless of the contested Jul 78 OER. Therefore, we recommend his request to void his nonselections by the Jul 79 and Sep 80 permanent major boards, be denied."

in *Sanders v. United States,* 219 Ct.Cl. at 302:

> Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters. *See Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971). Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards. Thus, while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions. *Snell v. United States,* 168 Ct.Cl. 219, 227 (1964).

Plaintiff raises several points in opposition to the denial of relief by the AFBCMR. However, the essence of plaintiff's claim is that the adverse actions taken by the Air Force are all tainted by the initial polygraph, asserted to have been illegal, and that under the "fruit of the poisonous tree" doctrine, these actions must be overturned. Plaintiff claims he was not properly advised by counsel that evidence gained from the polygraph would be inadmissible in a court-martial proceeding such that his decision to accept Article 15 nonjudicial punishment was not an informed and knowing waiver of his rights. Finally, plaintiff argues that mention of the OSI investigation in his OER for the period November 4, 1977 through July 6, 1978 was incorrect as it is asserted that the investigation was not finalized. Even if finalized, plaintiff asserts that the OER rating comments are also tainted by the polygraph.

Defendant asserts that the denial of relief by the AFBCMR was correct in view of the record showing no valid basis to overturn the administrative actions leading to the separation from active commissioned service which forms the basis for plaintiff's pleaded monetary claim.

Initially, it must be recognized that it was improper for the OSI to question plaintiff by a polygraph examination regarding his various purchases at the AAFES without advising him of his rights. AF Regulation 124–15, 18 June 1976, provided, in part:

> This regulation prescribes the conditions under which polygraph examinations may be conducted within the Department of the Air Force * * *. It implements DOD Directive * * *.
>
> 2. *General:* * * *
>
> f. No polygraph examination will be conducted unless the person being considered for polygraph examination voluntarily consents in writing after having been advised:
>
> \* \* \* \* \* \*
>
> 2. Of his [or her] rights in accordance with either the 'self-incrimination clause' of the Fifth Amendment to the Constitution or Article 31 of the Uniform Code of Military Justice, whichever is appropriate."

The question raised is whether this improper polygraph action must be held to have tainted all subsequent proceedings such as to invalidate plaintiff's discharge. after he was passed over for promotion.

In this regard, after the polygraph incident, plaintiff was properly informed of his rights during the formal OSI investigation and he then provided similar admissions. In *United States v. Nargi,* 2 M.J. 96 (1977), it was held that the government had failed to demonstrate that the taint of an earlier illegal interrogation had been overcome so that a second admission by the accused could be introduced at his trial. Relying upon *Nargi,* plaintiff argues that use of the OSI investigation by the Air Force was improper.

 The AFBCMR concluded that the commanding officer had reliable evidence, other than plaintiff's admissions, that he purchased base articles for sale to an unauthorized person. The record supports this conclusion. A computer printout showed numerous purchases by plaintiff and the

unauthorized person involved provided a statement.[6]

■ However, even if the information plaintiff provided in the OSI investigation is considered to be required to support the administrative actions at issue, it is concluded that it was properly so utilized. A criminal proceeding is not involved in this matter. Plaintiff's monetary claim stems from Article 15 nonjudicial punishment and selection board actions. These are civil, not criminal, proceedings. *Dumas v. United States*, 223 Ct.Cl. 465, 620 F.2d 247 (1980); *Bowes v. United States*, 227 Ct.Cl. 166, 645 F.2d 961 (1981); *Cole v. United States*, 228 Ct.Cl. 890 (1981).

Accordingly, even if a basis would exist to apply the exclusionary rule in a criminal proceeding, it does not follow that plaintiff's statements and other evidence could not be used in the administrative proceedings at issue. In general, the exclusionary rule has not been applied to comparable civil proceedings. *See United States v. Janis*, 428 U.S. 433, 446–47, 96 S.Ct. 3021, 3028–29, 49 L.Ed.2d 1046, *reh'g denied*, 429 U.S. 874, 97 S.Ct. 196, 50 L.Ed.2d 158 (1976); *INS v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *Garrett v. Lehman*, 751 F.2d 997 (9th Cir. 1985).[7]

Plaintiff argues that he had ineffective counsel when he agreed to Article 15 nonjudicial punishment. It is claimed that he should have been informed that his admissions during the polygraph could not be used in a court-martial and that this could have resulted in his choice of such a criminal proceeding. As noted previously, it is not at all clear that such advice would have been correct, particularly in view of the admissions made after plaintiff was advised of his rights pursuant to a formal investigation of his purchasing activities.

In *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970), it was ruled that "a defendant's plea of guilty based upon reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession." While plaintiff did not plead guilty, the decision to accept Article 15 nonjudicial punishment should not call for a higher standard with respect to assistance of counsel. Here, the AFBCMR had before it a copy of counsel's statement regarding his defense of Captain Varn and denied plaintiff's claim. It is concluded that the administrative decision is supported by the record and was legally correct.[8]

---

**6.** While plaintiff argues that the statement should also be held tainted as the name surfaced during the improper polygraph, it does not appear that the taint doctrine, if applicable to the proceedings involved, should be so applied. There is no indication the statement was not voluntary and no question as to the reliability of its contents. *See Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

**7.** Moreover, even if the discharge proceedings were considered to be criminal in nature, the rule in *United States v. Nargi, supra*, relied upon by plaintiff, would not be controlling. This decision predated the ruling in *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), permitting admission of a subsequent confession in circumstances where, as here, it was knowingly and voluntarily made. *See Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969).

**8.** In this regard, the recent decision in *Fairchild v. Lehman*, 814 F.2d 1555 (Fed.Cir.1987), has been considered and determined not to be applicable. In *Fairchild* it was ruled that the waiver of a right to trial by court-martial must not be the product of erroneous legal advice as to the consequences of electing nonjudicial punishment. In *Fairchild*, a discharge resulted after erroneous advice was provided that no discharge could be received in an Article 15 proceeding. In the instant case, no misinformation as to the consequences of nonjudicial punishment is present. Moreover, it is probable that plaintiff's subsequent admissions would have been admissible in a court-martial such that the lack of advice on this aspect could not be relevant "misinformation" with respect to invalidating a decision to elect nonjudicial punishment. Finally, the monetary claim at issue here stems from plaintiff's discharge as a result of selection board actions, not the Article 15 decision. The Article 15 proceeding was, at best, collaterally involved. The AFBCMR's decision is premised upon a record showing the probable lack of any promotion even in the absence of the contested OER. Accordingly, this case is not controlled by the decision in *Fairchild*.

■ Finally, it is concluded that plaintiff's position that the mention of the OSI investigation in the OER for the period November 4, 1977 through July 6, 1978 was improper lacks validity. At issue is the requirement of Air Force Regulation 36–10 that, to be included, an investigation must be "finalized" at the time the report closes. The record does not disclose the name of the recipient of the OSI investigation report so that plaintiff argues it has not been shown to have been published. The AFBCMR reported that it had been ascertained that the report was published in April 1978 within the rating period.

From plaintiff's briefed argument in this matter, it is concluded that no dispute exists over the fact that the OSI investigation, itself, was completed during the rating period. The Article 32 investigation, which took place in May and June 1978, resulted from the OSI investigation. The Article 32 hearing took place on June 8, 1978 and plaintiff and his counsel were present. Plaintiff argues, however, that all actions arising from the OSI investigation must also be "finalized." The AFBCMR rejected this position and accepted the Air Force's interpretation that a report of investigation is sufficient in itself to enable a rater or reviewing official to reference it in an OER. Giving due deference to this agency interpretation, it is concluded that it is reasonable and that plaintiff's position cannot be sustained. *Julius Goldman's Egg City v. United States*, 697 F.2d 1051, 1055 (Fed.Cir.1983). Reference to the OSI investigation in the contested OER was permissible as the investigation, itself, was finalized.

### Conclusion

Under the applicable review standard, it is concluded that the AFBCMR's decision denying the relief sought by plaintiff must be upheld. Accordingly, it is ORDERED that final judgment shall be entered dismissing the complaint with no costs to be assessed.