Rocky L. WALES, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 722–86C.

United States Claims Court.

March 30, 1988.

D. Michael Wells, Eugene, Or., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton,

for defendant. Captain Sarah P. Merck, Dept. of the Army, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on cross-motions for summary judgment.

## FACTS

The following facts, which are uncontested unless otherwise noted, are taken from the administrative record and the parties' statements of facts. On December 6, 1981, Rocky L. Wales ("plaintiff"), a staff sergeant (E-6) in the United States Army (the "Army") serving in South Korea, who had been on active duty for all but four months since January 23, 1969, was at the Yongsan Military Reservation Commissary. Plaintiff's wife and son had selected groceries and other items and left the commissary while plaintiff stayed at the cashier's station. Plaintiff put the purchases on the conveyor belt, according to the cashier (plaintiff takes the position that a bag boy removed the items), and the cashier rang up the total as $82.02. According to the sworn statement of Verlie Barefield Hyatt, a commissary employee who was monitoring the cashier at the time, he noticed that the cashier was ringing up a lot of low-priced items, so he walked over to see what the customer was purchasing. Mr. Hyatt observed that there were a lot of high-priced items on the belt and already in bags. Plaintiff paid and was adjacent to the cashier's station when he was stopped by the noncommissioned officer in charge, who, at Mr. Hyatt's request, asked to recheck plaintiff's purchases. Mr. Hyatt calculated a verification total of $297.24—a discrepancy of $215.22. The cash register transaction tape (register receipt), retabulation, and inventory of items appear in the record.

On January 7, 1982, plaintiff received a copy of DA Form 268, Report for Suspension of Favorable Personnel Actions. The charges enumerated on this report and the Military Police Report, DA Form 3975, were 1) conspiracy to circumvent the Ration Control System in violation of Article 81 of the Uniform Code of Military Justice, 10 U.S.C. § 881 (1982); 2) attempted larceny of property, Article 80, 10 U.S.C. § 880, and 3) overpurchase of controlled items, (8th) AR Reg. 60-1 (Mar. 24, 1981); Article 92, 10 U.S.C. § 892.

Plaintiff was notified that he would be court-martialed based on the incident of December 6. In lieu of trial by court-martial, plaintiff was offered nonjudicial punishment proceedings pursuant to Article 15, 10 U.S.C. § 815, which afforded plaintiff the opportunity to demand trial by court-martial or to waive trial and elect nonjudicial punishment by his commanding officer. On January 11, 1982, plaintiff received a copy of DA Form 2627, Report of Proceedings Under Article 15, charging him with conspiracy to wrongfully and unlawfully fail to register the correct amount of items presented for purchase in the amount of $215.22 and conspiracy to commit larceny—both in violation of Article 81—and stealing United States currency of a value of $215.22 in violation of Article 121, 10 U.S.C. § 921. The DA Form 2627, signed by plaintiff's commander, Col. Norman M. Bissell, provided, in pertinent part, as follows:

2. You have several rights under this Article 15 procedure. First, I want you to understand that I have not yet made a decision whether or not you will be punished, and I will not impose any punishment unless I am convinced beyond a reasonable doubt that you committed the offense. You may ordinarily have a public hearing before me. You may bring a person to speak on your behalf. You may present witnesses and other evidence to show why you shouldn't be punished at all (*matters in defense*) or why punishment should be very light (*matters in extenuation and mitigation*). I shall consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose. You are not required to make any statements at all, but if you do, they may be used against you in this Article 15. If you do not want me

to dispose of this report of misconduct under Article 15, you have the right to demand trial by court-martial instead. In deciding what you want to do you have the right to consult with a lawyer located at....

(Footnote omitted; emphasis in original.)

According to plaintiff, when Col. Bissell read plaintiff his Article 15 option on January 11, Col. Bissell questioned plaintiff about himself, his family, his military career, his car, and other topics, as well as the previous day's shopping trip. Plaintiff in that interview, as reflected in plaintiff's statement on appeal submitted on February 26, 1982, told Col. Bissell that "the only thing in which I was wrong was for not saying anything to anyone about the error on the cash register...." and "I knew there was an error but ... I did not realize the error was so great...."

On January 14, 1982, after meeting with two military attorneys, plaintiff informed Col. Bissell that he elected an Article 15 proceeding. Prior to electing nonjudicial punishment, plaintiff was advised by Capt. David A. Little, one of his attorneys, that the facts of the case would not support a finding of guilty to stealing U.S. currency.

On February 16, 1982, Col. Bissell conducted a hearing in the Article 15 proceeding. According to plaintiff, Col. Bissell told him that he had eliminated the two conspiracy charges and changed the third from stealing U.S. currency to wrongful appropriation of U.S. currency in the amount of $215.22 in violation of Article 121, 10 U.S.C. § 921. As Col. Bissell noted in his March 11, 1982 rebuttal to plaintiff's appeal, he dismissed the conspiracy charges "based on the fact that we had only circumstantial evidence." Col. Bissell explained that efforts to find the cashier proved unavailing since she had apparently departed the country immediately after the incident. Therefore, he stated, the violation had been changed to wrongful appropriation of U.S. currency, a lesser included offense of larceny. Consistent with the foregoing, the first two charges are crossed off the DA Form 2627, and the third charge changed by a handwritten no-

tation from stealing to wrongful appropriation of U.S. currency.

Four witnesses were present at the February 16 hearing at which plaintiff made a statement. On that date Col. Bissell found plaintiff guilty of the charge of wrongfully appropriating U.S. currency and imposed punishment consisting of a reduction of pay grade from E–6 to E–5 and forfeiture of $510.00 per month for two months.

The report of the proceedings itself does not describe the evidence put forward by plaintiff or other matters considered by Col. Bissell. The subsequent submissions on appeal by both plaintiff and Col. Bissell form the record on this point. The parties disagree whether plaintiff was aware that Col. Bissell was considering evidence of his past activities. However, it is undisputed that plaintiff did not request copies of the documents being considered, which is not surprising if plaintiff was unaware that Col. Bissell was considering his military record. Col. Bissell's March 11 rebuttal states that he had considered the following factors in imposing "the relatively harsh punitive actions:" 1) plaintiff's admission that he was "well aware" that his purchase was "under" (Col. Bissell meant "over") the sum totalled by the cashier; 2) plaintiff's admission that he was aware that there were controlled items in that purchase that were not recorded; 3) plaintiff's admission that he had not planned to bring the matter to the cashier's attention because he did not feel he would be caught; 4) plaintiff's "open admission" of guilt to the charge; 5) Col. Bissell's own investigation of plaintiff's purchase record showing that plaintiff had made similar purchases for approximately the same amount on the previous day from the same cashier; 6) information concerning a recently abandoned Military Police and Criminal Investigation Division ("CID") investigation for black market activities, specifically gasoline purchases; 7) plaintiff's "repetitive ration control violations"—six during his previous tours in Korea; and 8) plaintiff's counseling on four occasions "for desperately needing a haircut (1 formal, 3 verbal)."

On February 26, 1982, pursuant to Article 15(e), 10 U.S.C. § 815(e), plaintiff appealed to his commanding general through Capt. Little, arguing that the offense of wrongful appropriation of U.S. currency had not been proved. Plaintiff submitted his own statement arguing mitigation. His February 26, 1982 statement reads:

I stated to COL Bissell that I knew there was an error but that I did not realize the error was so great. I thought that the only reason for the error was that the cash register was broken. COL Bissell asked me if I had noticed any [discrepancies] the day before. I stated that I had brought [sic] only a few items and had not noticed any [discrepancy]. . . .

On March 11, 1982, Col. Bissell submitted his rebuttal of appeal. As summarized above the rebuttal sets forth the facts that Col. Bissell considered in the Article 15 proceeding.

In a memorandum to the commanding general dated March 19, 1982, Sgt. First Class Alex Carroll, a witness at the February 16 hearing, disagreed with Col. Bissell's statement that plaintiff admitted guilt and stated: "Wales said[,] 'The only thing I am guilty of is not saying anything to anyone about the error' (Cash register error)." Sgt. First Class Donald Reese, another witness, also gave a statement that plaintiff did not admit to being guilty of the charges:

Sgt. Wales did say that the only thing that he was guilty of was not saying anything to anyone about the error, but did not [admit] to being guilty of the charge. I also do not agree with the way that reference is made to Sgt. Wales['] comment that he didn't think he would get caught. Sgt. Wales did state this but in my opinion he was making reference to the fact he thought he had time to make up his mind being as he had not left the Commissary. . . .

On March 16, 1982, Lt. Cmdr. Howard C. Eggers, Staff Judge Advocate, in a memorandum for the commanding general, gave his opinion that the proceedings were conducted in accordance with law; however, he noted that the supporting evidence actually established the offense of "attempted larceny of commissary goods, the property of the United States, of a value of $215.22." Despite the error, Eggers stated that

it is clear from the DA Form 2627 that Sergeant Wales was adequately informed of the misconduct for which the commander proposed to punish him and that he knowingly accepted punishment for that misconduct. Furthermore, the description of the offense is adequate to bar further legal proceedings based on the same misconduct.

On March 18, 1982, Lt. Gen. James B. Vaught denied plaintiff's appeal.

On March 24, 1982, plaintiff sent Lt. Gen. Vaught a surrebuttal in response to Col. Bissell's rebuttal concerning the February 16 hearing. Plaintiff objected point by point to the statement, denying that he admitted that he was guilty and contending that, on the contrary, he had argued his innocence. Plaintiff stated:

I did not state that I knew the sum was under the sum noted by the cashier when ringing up my purchase. I stated that I knew the total should have been more than what was annotated on the cash register, but in my mind I thought that it was an error on the cash register. I did state that I knew there were controlled items in the purchase that were not noted or recorded by the cashier on the controlled items card. I did not know this at the time when I signed the card and told Colonel Bissell that the only thing I looked at was to insure the dollar amount was the amount annotated on the cash register. I found out about the controlled items not being annotated when I was furnished a copy of the M.P. report prior to seeing Colonel Bissell, that is why I stated that I knew there were controlled items in the purchase that were not noted on the anvil card. I did say that I didn't think I would be or get caught and I do not recall exactly why I said this other tha[n] the fact the way the question was worded when asked by Colonel Bissell. Sir, I may have this twisted a little bit but I believe

I had told Colonel Bissell that I hadn't made up my mind and was debating whether to say anything or take the groceries and go as if nothing was wrong when Colonel Bissell asked me why I didn't say anything. I believe this is where I stated that I didn't think I would get caught, and stated that I had not made up my mind. Colonel Bissell asked me who would I have told and asked the cashier? I said no that I would have told the Major or some other official in the Commissary. Sir, I still maintain that I did not think I would get caught, I had no reason to think anyone knew that there was an error on the total and did not think the cashier knew it either. I stated in my original appeal that I was in a state of [confusion] as to what I was going to do and I felt that as long as I had not left the Commissary I (would not get caught) because of the sign in the Commissary that states "Customers must correct all errors before departing the store." I thought that if I had taken the groceries that no one would have known but me. I did not convince myself to take the groceries prior to being apprehended. In my [opinion] it was solely ... [unreadable] to take the groceries or report the error. Sir, I did not at any time state that I was guilty of the charge, I have stated since the incident that I was innocent and told this to Colonel Bissell. I also told Colonel Bissell that I did not steal or wrongfully appropriate United States currency. I did state that the only thing I was guilty of was not bringing the error to the attention of someone in the Commissary, and do feel that I was wrong for not making a[n] immediate correction. I did think about taking the groceries but honestly had not made a decision to do so....

Plaintiff also denied making a "similar" purchase the day before since those items totalled only $29.00. Lastly, plaintiff said that Col. Bissell had discussed his previous ration control violations during the February 16 hearing, but that he had been violation free for 17 months.

Based on a personal interview on March 19, 1982, and plaintiff's March 24 surrebut-tal, Lt. Gen. Vaught adhered to his denial of plaintiff's appeal on April 1, 1982.

On December 1, 1982, plaintiff, by counsel, requested that the commanding general set aside his Article 15 punishment, but this request was denied without elaboration on December 22, 1982, and plaintiff was so notified by letter from Capt. Thomas J. Romig, Chief, Criminal Law, dated January 5, 1983.

Plaintiff requested reenlistment in the Army on February 3, 1983, to commence on April 2, 1983. His request was denied on or about February 16, 1983, and plaintiff was honorably discharged from active duty on July 2, 1983.

Plaintiff applied on February 23, 1983, to the Army Board for Correction of Military Records (the "ABCMR") requesting correction of his records to expunge reference to the Article 15 proceedings and reinstatement to active duty with back pay and allowances. The Office of the Judge Adjutant General rendered an advisory opinion on June 14, 1983, taking the position that the violation of wrongful appropriation of currency was not supported by substantial evidence, although sufficient evidence supported a finding of guilt to attempted larceny. The writer noted that "[t]he mistitling of related offenses arising out of the same factual situation is not a fatal legal error warranting relief from nonjudicial punishment." The advisory opinion concluded:

> Moreover, even if, for argument's sake, the specification as drafted did not comply with the requirements of paragraph 133, MCM, failure to comply with such a procedural provision will not invalidate punishment imposed unless there is a clear and affirmative showing of injury to a substantive right, pursuant to paragraph 130, MCM. No such showing has been made by the applicant, to the contrary, the evidence discloses no infringement of any substantive right.

The opinion also stated that Col. Bissell could consider the prior disciplinary and military record of the offender, citing MCM ¶ 129b. (rev. ed. 1969).

On July 13, 1983, after consideration of plaintiff's application; the record, including the commissary cashier's statement disavowing any conspiracy; and the advisory opinion, the ABCMR determined that there was insufficient evidence to demonstrate probable error or injustice to warrant a formal hearing. The ABCMR decision stated, in part:

The applicant did not have to accept nonjudicial punishment. If he felt he was innocent of the offense he should have demanded trial by court-martial. By accepting the nonjudicial punishment he appears to have indicated that there was some guilt on his part in conjunction with the cited offenses.

In consideration of all the evidence, allegations, and information presented by the applicant in relation to the evidence of all available records, regulatory, and staff opinions pertaining thereto, it is concluded that there is insufficient justification for granting the relief requested.

On September 6, 1983, plaintiff requested that the ABCMR reconsider its decision. This was the first time that plaintiff contended that he had been misadvised by Capt. Little and another military counsel that he could not be found guilty of conspiracy or of stealing U.S. currency. Plaintiff stated:

I was advised by trial counsel's Cpt. Little and Cpt. Hill to accept the article 15 instead of demanding trial by Court–Martial as I had stated I was going to do, and was told by both that there was no way to find me guilty of the charge steal [sic] U.S. Currency as the offense never happened.

Cpt. Little stated it would be like finding himself guilty for breaking his window pointing to his window in his office when it was not broken. Both defense counsels laughed at the charge and said that there was no way to be found guilty.

. . . .

I was told that there was no way possible to find me guilty of the charge in [an] Article 15 and was advised that if I requested Court–Martial they would realize the error in charging me and change it to

attempted larceny of goods and in essence, why gamble.

The ABCMR found no new evidence or other matter justifying resubmission and, on March 13, 1984, plaintiff's application for reconsideration was denied.

On March 8, and May 21, 1984, plaintiff submitted another request for reconsideration to the ABCMR. Plaintiff's March 4 submission included the following statement:

I sought legal guidance and spoke to two legal assistance officers who both stated I could not be found guilty of the 1st 2 charges without admission of guilt and laughed at the charge of steal [sic] U.S. Currency and was told by both that there was no way to find me guilty of that charge, further I was told by CPT Little that the commander had messed up because the charge should have been "Attempted Larceny of Goods" and that to find me guilty of the charge would be like finding him guilty breaking his window when it never was broke[n].

. . . .

Acceptance of the Article 15 was on the advice of Legal Council [sic] stating there was no way to be found guilty. . . .

It should be noted that this statement once again recapitulated the scenario that took place on December 6, 1981, ending: "I knew that the total should have been more than the amount I just paid." Since no new evidence had been submitted, this request was also denied on April 18, 1985.

On November 17, 1986, plaintiff filed his complaint in this court seeking correction of records, reinstatement, backpay, and refund of the $82.02 he paid for the confiscated items. On defendant's motion over plaintiff's objection, Senior Judge White remanded the case to the ABCMR on February 5, 1987, for reconsideration of its determination that plaintiff's acceptance of nonjudicial punishment was an indication of guilt. On April 1, 1987, the ABCMR conceded legal error, but denied plaintiff's application, stating that the proceedings were conducted lawfully, that plaintiff was advised of his right to defend, that the board would not substitute its judgment based

only on partial evidence, and that error was not prejudicial. On May 15, 1987, plaintiff filed his first amended complaint in the Claims Court. Defendant moved for summary judgment on July 6, 1987, and the case was transferred to this court on February 23, 1988.

## DISCUSSION

In reviewing the ABCMR's April 1, 1987 decision, this court is limited to determining whether the decision was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulations, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced. *Fairchild v. Lehman*, 814 F.2d 1555, 1557 (Fed.Cir.1987) (review of board decision challenging Article 15 proceeding); *Varn v. United States*, 13 Cl.Ct. 391, 394 (1987) (same).

 As the Federal Circuit explained in *Fairchild*, nonjudicial punishment, unlike the general and special court-martial, is not a formal adversary criminal proceeding, but is regarded as noncriminal in nature. 814 F.2d at 1558 (citing *Middendorf v. Henry*, 425 U.S. 25, 31–32, 96 S.Ct. 1281, 1285–86, 47 L.Ed.2d 556 (1976)); *see also Dumas v. United States*, 223 Ct.Cl. 465, 473–74, 620 F.2d 247, 251–52 (1980). As a consequence, the rights afforded by the fifth and sixth amendments of the Constitution to due process, confrontation, and assistance of counsel do not attach. Nonjudicial punishment is "the least formal method of reviewing alleged violations of the [Uniform Code of Military Justice]." *Fairchild*, 814 F.2d at 1558. Pursuant to Article 15(a), 10 U.S.C. § 815(a), a commanding officer can impose nonjudicial punishment for a minor offense, § 815(b), unless the accused service member demands trial by court-martial in lieu of nonjudicial punishment. By electing an Article 15 proceeding, the range of penalties is limited, *see Dumas*, 223 Ct.Cl. at 474, 620 F.2d at 252; a court-martial secures fundamental due process rights for offenses that are not "minor", and the corresponding penalties are more severe. *See id.* at 477, 620 F.2d at 253.

 Article 15 is implemented by procedures found at MCM ¶¶ 128–135 (rev. ed. 1969). Paragraph 133a. insures that the commanding officer will conduct an appropriate inquiry in order to determine that an offense punishable under Article 15 has been committed. *See also* AR 27–10. Thus, election of an Article 15 proceeding does not presume guilt. The DA Form 2627, quoted above, which was discussed with plaintiff prior to his electing nonjudicial punishment, emphasizes the point that the commanding officer had not made up his mind as to guilt.

The ABCMR's April 1, 1987 decision in this case is flawed, because it recants a major premise of its earlier July 13, 1983 decision that plaintiff's guilt was presumed due to his having elected nonjudicial punishment. In its most recent decision, the ABCMR explained:

> The Board acted in part, under the mistaken notion that the applicant, in not demanding trial by court-martial, admitted his guilt in the nonjudicial proceeding before his commander. Statements to the effect that the applicant "accepted punishment" and that, "If he felt he was innocent of the offense he should have demanded trial by court-martial" are clearly in error and are not in keeping with the presumption of innocence in American criminal law. The applicant did not, by electing to accept nonjudicial procedure, acknowledge or admit guilt.

Notwithstanding the foregoing, the ABCMR deemed the error nonprejudicial "in light of the evidence of record showing that the applicant was properly advised of his right to present matters in defense and that he did so."

In this court's view, plaintiff's objection to the remand was well taken. Plaintiff argued that the ABCMR had considered the matter three times already and that no justification was offered for allowing the board to attempt to correct that which the board itself deemed "clearly in error." The question, however, is not whether the board can absolve itself of legal error in

disregarding the presumption of innocence in a nonjudicial punishment proceeding, but whether the error is serious and prejudicial to plaintiff. *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979). The court has displayed the record in detail to show the facts before the ABCMR. A full record review has been undertaken to put any errors in the proceeding itself and the board's review of it in the context of the evidence and arguments presented to the ABCMR.

1. The challenges mustered by plaintiff can be put in perspective by restating certain facts that exist without substantial controversy. Plaintiff was detained in 1981 within a military commissary after a commissary employee monitoring the cashier observed her ringing up "a lot of small prices." According to the statement plaintiff provided from the cashier, plaintiff had unloaded his groceries and other items, although he did not bag them. Plaintiff then paid $82.02 for goods with a value of $297.24. When he was questioned, plaintiff had not departed the commissary, but he had completed the purchase transaction and had taken several steps along the cashier's station. At no time has plaintiff wavered from the position that he was aware before he was questioned that somehow he had come into the possession of the items with a value exceeding the amount he paid for them. However, he claims that he did not note the disparity between the $82.02 that he tendered and the actual cost of the items, almost $300.00, until he had paid and taken a few steps.

The quoted excerpts from plaintiff's statements on appeal to his commanding general acknowledge that he had not made up his mind what to do about the situation, if anything. Plaintiff's statements to the board are to the same effect.

■ Plaintiff argues that he committed no violation since he had not departed the commissary when he was detained. Until he departed, according to plaintiff, he could not have the requisite intent knowingly to deprive the Army of its property. Plaintiff is mistaken. Asportation occurred when plaintiff took items through the cashier's stand without fully paying for them, thereby taking away property of the United States with the intention of depriving the owner of its property without payment. The sign posted in the commissary read: "Customers Must Correct All Errors Before Departing the Store." Although plaintiff may have lost his right to question a charge on the register receipt or the change that he received after he departed the commissary, the notice did not vitiate an attempted larceny. The notice by its terms was intended to protect the commissary against claims from the customers, not vice versa. The trier of fact could infer from the circumstances that plaintiff knowingly underpaid for his purchases when he went through the cashier's stand.

Plaintiff also cites the statement of Staff Sgt. Mercer, who detained him in the commissary. However, the statement is actually that of an Army legal clerk, "Trial Defense Service," who recounts a telephone conversation with Staff Sgt. Mercer, in which the latter said that when plaintiff was questioned, he did not act like a guilty person.

Although a discrepancy of several dollars or a few items may have been more suggestive that a mistake had been made, this court cannot substitute its judgment for a credibility findings of the trier of fact, *Hambsch v. Department of Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986), *Cochran v. United States,* 3 Cl.Ct. 3, 4 (1983) (on rehearing) (review of board decision challenging Article 15 proceeding), *aff'd mem.,* 732 F.2d 168 (Fed.Cir.), *cert. denied,* 469 U.S. 853, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984), especially when intent is derived from the circumstances. *See Warren v. Halstead Indus., Inc.,* 802 F.2d 746, 752 (4th Cir. 1986), *reh'g en banc granted,* 814 F.2d 962 (4th Cir.1987). The evidence before Col. Bissell included the cash register transaction tape showing that most of the items were rung up at prices of less than $1.00, with intermittent charges of more than $1.00 for the controlled items that were tabulated; the controlled food item purchase records for the transaction; the form verifying cash register accuracy; and the

retabulation and inventory of items establishing their actual cost. From this Col. Bissell plausibly could find that the error was not inadvertent or random, and that plaintiff knowingly purchased $297 in items for $82. There was sufficient evidence that plaintiff knowingly underpaid for the items.

The record fully supports Col. Bissell's decision that plaintiff's conduct constituted an offense arising out of his actions at the commissary on December 6, 1981, although the offense is attempted larceny. Since there was evidence that the cashier had not made a mistake, it became plaintiff's burden to account for how he came into possession of items far exceeding the amount that he paid for them.

The cashier's statement submitted on May 12, 1982, in connection with plaintiff's May 11, 1982 request for clemency, does not undermine the ABCMR's conclusion that the evidence was sufficient to warrant imposition of nonjudicial punishment. This undated statement was not before Col. Bissell or Lt. Gen. Vaught on appeal.[1] The statement indicates that it was obtained from Myeong He Gunn in the United States after she had returned with her husband. She says that she left Korea shortly after December 6, 1981, for personal reasons unrelated to the events of that date. Ms. Gunn relates that on December 6 she was under medication for dizziness and headaches, was suffering from her condition, made an unintentional error in totaling the groceries, left after plaintiff's transaction to seek medical attention, was not charged, and did not conspire with plaintiff. Since Ms. Gunn says that her husband notified the Yongsan Military Reservation PX (where he apparently worked) of his whereabouts, it is likely that plaintiff obtained her address, as he explains it, through the commissary manager after both Ms. Gunn and he returned to the United States.

■ The cashier's statement was one justification put forward for reopening or overturning this matter and must be evalu-

ated at its face value. Ms. Gunn says that plaintiff unloaded the items that he claims he did not realize either exceeded the purchase price or exceeded the ration allowances. Plaintiff offers the explanation in his March 8, 1984 request for reconsideration that the cash register was broken and that he had "got $100 worth of groceries because the 1 as in 100 did not appear in front of the $82.02." The cash register transaction tape shows how the items were rung up and itself refutes this explanation. Since Col. Bissell was not able to consider the Gunn statement, the issue becomes whether it should have persuaded the ABCMR that an error or injustice had been committed. The court concludes that given plaintiff's own statements, especially the portion of his March 24, 1982 surrebuttal quoted above, the cashier's statement does not detract from the sufficient evidence to support a finding of guilt or substantial evidence of record supporting the ABCMR's decision.

■ 2. Unquestionably, there was error in the Article 15 proceeding. Not only was plaintiff found guilty of a violation of the Uniform Code of Military Justice for which he was not charged, but the offense was not a lesser included offense of any of the violations cited.

When plaintiff elected the Article 15 proceeding, the charges identified on the DA Form 2627 were conspiracy to fail to register the items presented for purchase, conspiracy to commit larceny, and stealing U.S. currency. Although the administrative record contains references that the Army considered the offense to be attempted larceny (for example, Col. Bissell states in his March 11, 1982 rebuttal of appeal that on advice of counsel he reduced the larceny charge to the lesser included offense of wrongful appropriation of currency), defendant concedes that punishment was not imposed for a lesser included offense of any violation that was charged. Def's Br. filed Mar. 21, 1988, at 1.

MCM ¶ 133a. provides, in pertinent part:

---

1. The clemency request was not before the ABCMR, but the Gunn statement appears in the record before the board.

The commanding officer, upon ascertaining to his satisfaction after any inquiry he considers necessary that an offense punishable under Article 15 has been committed by a member of his command, will, if he determines to exercise his Article 15 authority, so notify the member of *the nature of the alleged misconduct by a concise statement of the offense in such terms that a specific violation of the code is clearly stated* and inform him that he intends to impose punishment under Article 15 for the misconduct unless, if such a right exists (132), trial by court-martial is demanded. Also, unless prohibited by regulations of the Secretary concerned, the commander may notify the member of his intention to recommend to a superior commander that the member be punished under Article 15 for his alleged misconduct unless, if such a right exists (132), trial by court-martial is demanded. The notification will also inform the member that he may submit any matter desired in mitigation, extenuation, or defense. In every case, the member will be notified that he is not required to make any statement regarding the offense or offenses of which he is accused or suspected and that any statement made by him may be used against him in a trial by court-martial. An election to accept nonjudicial punishment constitutes a waiver of the right to demand trial. . . .

(Emphasis added.)

MCM ¶ 130 provides, in full:

EFFECT OF ERRORS. A failure to comply with any of the procedural provisions of this chapter will not invalidate a punishment imposed under Article 15, except to the extent that may be required by a clear and affirmative showing of injury to a substantial right of the person on whom the punishment was imposed, which right was neither expressly or impliedly waived.

The issue becomes whether the failure to advise plaintiff of "a specific violation of the code," as required by MCM ¶ 133a. amounts to "injury to a substantial right" of plaintiff that was not waived expressly

or by implication, MCM ¶ 130, such that the punishment should be invalidated. Defendant contends that the mistitling of offenses arising out of the same factual situation is not error and, if it is, not error that should invalidate the nonjudicial punishment. According to defendant paragraph 133a. requires notification of the nature of the alleged misconduct, *"i.e.,* misconduct arising from . . . [plaintiff's] knowing purchase of $297 in groceries for $82 at the commissary on the date alleged." June 14, 1983 advisory opinion to the ABCMR. However, the cases defendant relies on do not go this far, standing for the lesser proposition that as long as the offense described informs the accused of the nature of the misconduct for which he can be cited, there has been compliance with paragraph 133a.

In *United States v. Eberhardt,* 13 M.J. 772 (A.C.M.R.1982), plaintiff challenged the notification of nonjudicial punishment for failure to state an essential element of the violation—that his departure from his duty station was without proper authority. The military tribunal rejected the contention that the record was defective:

[W]e do not believe that the misconduct stated in an Article 15, 10 U.S.C. § 815, proceeding need be stated with the same legal sufficiency as an offense at a court-martial. . . . Rather, it is sufficient if the offense is described in such terms that the accused is apprised of the true nature of the alleged misconduct. *United States v. Nordstrom,* 5 M.J. 528 (N.C.M.R.1978). This rationale is consistent with the purpose of nonjudicial punishment, which is to provide military commanders with an informal and speedy means to punish disciplinary infractions. Legalistic bedizenment was never intended. *See generally* paragraph 129, MCM 1969 (Rev). *Of course, the allegation should be sufficient to protect against double punishment for the same offense as well as apprise the accused of what he must defend against.* Paragraph 128d, MCM 1969 (Rev). *Cf. United States v. Sell,* 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953).

13 M.J. at 774 (citation & footnote omitted; emphasis added). In *United States v. At-*

*chison,* 13 M.J. 798 (A.C.M.R.1982) (per curiam), appellant argued that since the record of nonjudicial punishment charging plaintiff with failure to go to his place of duty lacked definiteness by not adequately identifying the place of duty, it failed to state an offense. The military tribunal held that since the language of the notification sufficiently apprised appellant of his misconduct in violation of Article 86(1), 10 U.S.C. § 886(1), the record stated an offense with the requisite specificity.

Defendant cannot point to a military or other case standing for the proposition that the misconduct can be described sufficiently to constitute an offense, but that the specific violation need not be identified. Certainly, *Dumas v. United States* does not help defendant by describing an Article 15 proceeding as affording the accused "specific notice of the offense charged." *Dumas,* 223 Ct.Cl. at 473, 620 F.2d at 251.

■ It is held that Col. Bissell erred in failing to notify plaintiff of the specific violation that his misconduct was deemed to constitute. But the court cannot hold that the error invalidated the punishment. This is because the record shows that plaintiff did not claim that he was misled as to the elements of the violation that the misconduct supported, *viz.,* attempted larceny, since he argued throughout the proceedings before Col. Bissell, on appeal to his commanding general, and on application to the ABCMR that he lacked the requisite criminal intent to steal or to appropriate wrongfully property of the United States or to attempt either. Indeed, plaintiff acknowledged to the ABCMR in his March 8, 1984 statement on reconsideration that the misconduct charge he had defended against was attempted larceny: "I was told by Capt. Little that the commander had messed up because the charge should have been 'Attempted Larceny of Goods....'" The record before the ABCMR does not show clearly and affirmatively that the error injured a substantial right of plaintiff. The DA Form 2627 notification fully ap-

prised plaintiff of all the facts and circumstances upon which any violation could be predicated. The recital of facts in this opinion additionally highlights the Army's consistent position that plaintiff had full notice of the conduct for which he stood charged, even though not the correct violation, and that the notice of conduct was sufficient to protect plaintiff from prosecution on other charges arising from the same conduct, as required by Article 15(f), 10 U.S.C. § 815(f).

■ 3. Plaintiff argues that Capt. Little's advice that he could not be found guilty of stealing U.S. currency motivated his election to stand on the Article 15 charges and forego a full adversary criminal proceeding by court-martial, with its attendant fifth and sixth amendment protections. On this basis plaintiff claims that his election was not intelligent, as required by the Federal Circuit in the *Fairchild v. Lehman,* 814 F.2d at 1555. "[W]e believe it mandatory that the individual to be disciplined must be told of his right to confer with an independent counsel before he opts for disposition ... [at the level of his commanding officer in an Article 15 proceeding]." *Id.* at 1559. Thus, the waiver of the statutory right [2] to trial requires an opportunity meaningfully to consult with counsel prior to electing nonjudicial punishment. Plaintiff in *Fairchild* complained that he was misadvised by counsel as to the punishment that could be imposed in an Article 15 proceeding, and he submitted an affidavit to that effect to the board. Military counsel's unsworn letter was deemed by the district court not to constitute substantial evidence that plaintiff's waiver was valid. The appeals court agreed, holding that misinformation as to the consequences of electing nonjudicial punishment invalidated the election. *Id.* at 1559–60; *see Varn v. United States,* 13 Cl.Ct. at 396 n. 8.

In his September 6, 1983 request to the ABCMR for reconsideration, quoted above, plaintiff stated that his military counsel

2. *But see United States v. Booker,* 5 M.J. 238, 243 (C.M.A.1977), *rev'd on reh'g on other grounds,* 5 M.J. 246 (C.M.A.1978) (waiver of court-martial and decision to accept Article 15 proceeding involve due process considerations).

advised him that the conspiracy charges could not be proved absent a guilty plea and that he could not be found guilty of stealing U.S. currency because property, not currency, was involved and that the mistitling of the offense could be changed if he requested a court-martial.

*Fairchild* does not hold that any erroneous advice taints waiver of the statutory right to elect. In the case at bar, according to plaintiff's representations on reconsideration before the ABCMR, Capt. Little told plaintiff in effect that the charges could not be corrected unless he elected a court-martial. What was not disclosed was that even if the violations were mistitled in the Article 15 proceeding, the error would not void the punishment automatically. Plaintiff argues: "[E]ither Major Little's advice was correct and the mistitling was fatal to a proper finding of guilt at the NJP [nonjudicial punishment] proceeding or the advice was erroneous and the Plaintiff was prejudiced by relying on it in electing the NJP." Plf's Br. filed Dec. 4, 1987, at 3 (citation omitted).

Faced with a similar complaint in *Varn v. United States*, 13 Cl.Ct. 391, Judge Merow turned to *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed. 2d 763 (1970), wherein the Supreme Court refused to overturn a guilty plea based on misadvice as to admissibility of a confession. Plaintiff's election of nonjudicial punishment in *Varn* by analogy could not be invalidated when military counsel failed to inform him that is admissions in a polygraph examination were inadmissible in a court-martial. 13 Cl.Ct. at 396. In *McMann* the Supreme Court also said that "uncertainty is inherent in predicting court decisions...." 397 U.S. at 771, 90 S.Ct. at 1449.

Plaintiff's statements before the ABCMR in this case show that he considered several factors in addition to the advice of military counsel in electing an Article 15 proceeding. Moreover, accepting his assertions as true, plaintiff in effect was advised that if he demanded trial by court-martial the mistitling would be corrected and that if he elected the Article 15 proceeding one error

already had been made and thus he could (and did) appeal on the ground that the offense was mistitled. The advice plaintiff received amounted to a discussion of his options; was tactical in nature; and, unlike *Fairchild*, did not concern the consequences of an Article 15 proceeding. The court concludes that there was substantial evidence before the board that plaintiff's waiver in this case was intelligent.

4. Plaintiff argues that Col. Bissell failed to advise him that he was considering plaintiff's prior military record and to provide him with copies of documents considered in connection with the February 16, 1982 hearing. However, plaintiff fails to cite any statute, regulation, procedure, or court decision requiring either notice that his military record was under review or provision of documents that were being considered. *See Alberico v. United States*, 783 F.2d 1024, 1028 (Fed. Cir.1986) (Claims Court lacks jurisdiction over unequal treatment challenges unless statute, regulation, or constitutional provision conferred substantive right of recovery). Col. Bissell was authorized to consider plaintiff's prior disciplinary and military record. MCM ¶ 129b. Copies of documentary evidence pertaining to the case considered by Col. Bissell were required to be attached to the file. MCM ¶ 133a. Review of the record before the ABCMR shows that the documentary evidence obtained from the commissary and plaintiff's purchase record of controlled items appear, as well as excerpts from plaintiff's Military Personnel File. It is held that plaintiff was notified adequately and that the record was duly constituted.

5. Plaintiff and defendant lodged declarations and affidavits and a deposition transcript. Defendant's declaration of Col. Bissell is rejected, except as it responds to plaintiff's affidavits discussed below. Defendant makes no showing of why the views Col. Bissell offers were not presented to the ABCMR after plaintiff had challenged Col. Bissell's consideration of plaintiff's military record, including prior ration violations. *See Long v. United States*, 12 Cl.Ct. 174, 175–76 (1987). However, de-

fendant is technically correct that (now) Major Little's declaration responding to plaintiff's charges concerning the latter's advice on the Article 15 option can be considered, since plaintiff first made the argument when he sought reconsideration by the ABCMR and since the board did not call on the Army to respond to a new argument that was not premised on new evidence.[3] The court has not considered the declaration or considered the deposition transcript of Major Little that was filed previously because they create factual issues that are not necessary to reach the court's disposition of plaintiff's arguments based on his version of the facts.

Plaintiff offers the affidavits of John and Candy Becerra dated June 15, 1987, as newly discovered information or that which was unavailable during the administrative review. Plf's Mot. filed Sept. 16, 1987, at 1. Plaintiff argues, moreover, that these affidavits show improper behavior and cast serious doubt on the integrity of the Article 15 proceeding.

▉▉▉▉ The affidavits report conversations on December 1981 with Command Sgt. Major Goecher (or Goetsch) and his wife, whereby the Goechers told Sgt. and Mrs. Becerra, in separate settings, that plaintiff was going to be found guilty, reduced in rank, and barred from reenlistment in the Army. According to Sgt. Becerra, CSM Goecher told him that Col. "Bissell always did what CSM Goecher told him to do when it concerned enlisted personnel." Affidavit of John Becerra, June 15, 1987, at 2. The first problem with these affidavits is that plaintiff hardly accounts for their production four years after the first board review. According to plaintiff, the Becerras were friends, but before

spring of 1987 plaintiff was unaware of their knowledge of his Article 15 proceeding. Affidavit of Plaintiff, Aug. 11, 1987, at 3. Second, the affidavits only aver that CSM Goecher said that he would or had influenced Col. Bissell's decision. Plaintiff points to no case law that recognizes affidavits of this nature as a basis for voiding or reopening military proceedings. An affidavit of the decisionmaker or one purporting to quote him may have justified pursuing the allegations, *see, e.g., Savio v. United States,* 213 Ct.Cl. 737, 739, 553 F.2d 105 (1977) (rater admitted that rating not consistent with rater's high regard for plaintiff and that pertinent information not included in the report); *Skinner v. United States,* 219 Ct.Cl. 322, 327–28, 594 F.2d 824, 827–28 (1979) (rater admitted that he did not give plaintiff deserved rating because of influence from superior who had authority to "rate the rater"), but allegations as tangential to the actions of the decisionmaker as the Becerras'[4] do not provide a basis for pursuing them. Col. Bissell's rejoinder to the Becerras' affidavits has been filed, but not considered in view of the court's rejection of these affidavits.

▉▉ 6. Even if the court were to hold for plaintiff, any order would be limited to restoration of pay forfeited and rank, expungement of reference to the Article 15 proceedings in plaintiff's records, and backpay for the pay differential until plaintiff's enlistment expired. *See Clackum v. United States,* 148 Ct.Cl. 404, 296 F.2d 226 (1960) (discharge invalid due to gross procedural and constitutional defect, but relief limited to end of then-current enlistment), *explained in Austin v. United States,* 206 Ct.Cl. 719, 723–24, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975).

---

3. The court has considered plaintiff's arguments on point because Senior Judge White allowed the ABCMR to reframe its decision. Fundamental fairness accords plaintiff the same latitude.

4. Plaintiff's claim to recover the $82.02 that he paid for the confiscated items is rejected as untimely. Apparently, this entirely new claim was presented to the ABCMR only in connection with plaintiff's second request for reconsideration dated May 21, 1984. Moreover, defendant properly asserts the bar of laches. The period

of time between the February 1982 hearing and the May 1984 request for reconsideration and the strong showing of prejudice made by defendant's declarant, in that only the food and transaction records were seized as evidence and that no claim for loss of $82.02 was submitted to the Army Claims Service, establish the elements of the affirmative defense. *Pepper v. United States,* 794 F.2d 1571 (Fed.Cir.1986).

Plaintiff's other arguments have been considered and are found to be without merit.

The court lacks the power to effect plaintiff's reenlistment. *United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed. 114 (1976) ("The established rule is that one is not entitled to the benefits of a position until he has been duly appointed to it...."); *see Maier v. Orr,* 754 F.2d 973, 983 (Fed.Cir.1985) (no jurisdiction to award relief beyond current enlistment); *Thompson v. United States,* 221 Ct.Cl. 983 (1979) (no jurisdiction over claim for refusal of reenlistment absent some special provision of law giving a right to reenlist); *Austin v. United States,* 206 Ct.Cl. at 723 ("United States has undertaken to pay ... [enlisted men] only to the end of the current enlistment, unless it properly discharges them prior to that time....") (citations omitted).

## CONCLUSION

The Article 15 proceeding leading to the challenged punishment did not adhere to MCM ¶ 133a., and error was committed both by Col. Bissell in mistitling the violation that was supported by plaintiff's conduct and by the ABCMR in assuming plaintiff's guilt. These errors individually and jointly, however, were not serious and did not prejudice plaintiff because Col. Bissell did not presume plaintiff's guilt; because in defending himself plaintiff was not misled as to the elements of an offense punishable by an Article 15 proceeding; and because substantial evidence of record otherwise supports the board's decision on remand.

Based on the foregoing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.